**NOT FOR PUBLICATION**                                                      **CLOSED**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WILSON MARTE, | : |
| | : Civil Case No. 11-3087 (FSH) |
| Plaintiff, | : |
| v. | : **OPINION & ORDER** |
| | : |
| MICHAEL J. ASTRUE, | : Date: January 12, 2012 |
| COMMISSIONER OF SOCIAL SECURITY, | : |
| | : |
| Defendant. | : |
| | : |

**HOCHBERG, District Judge:**

This matter comes before the Court upon Plaintiff Wilson Marte's motion to review a final determination of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to the Social Security Act, as amended, 42 U.S.C. § 405(g). The motion has been decided upon the written submissions of the parties pursuant to Fed. R. Civ. P. 78.

**I.  BACKGROUND**

**A.  Factual Background**

Plaintiff is a thirty-four year old male and a native of the Dominican Republic. (Complaint ¶4; Tr. 18.) He has a limited education and is limited in his ability to read or speak English. (Tr. 18.) Plaintiff's work history consists of a variety of unskilled labor. In 2001, Plaintiff worked as a machine operator, and in 2003, he worked as a chemical tank cleaner and a dispatcher for a large food warehouse. (Tr. 82.) Since January 2007, Plaintiff has been working as a forklift operator. (Tr. 258.)

Plaintiff had rheumatic fever as a child and now has valvular heart disease; in 1999, he had aortic and mitral valve replacement surgery. (Tr. 259.) On discharge from his 1999 surgery, Plaintiff was diagnosed with rheumatic heart disease, mitral stenosis, mitral and aortic regurgitation, sinus tachycardia, congestive heart failure, pulmonary hypertension, and anemia. (Tr. 116.) He has also been diagnosed with cardiomyopathy, and he has suffered one myocardial infarction. (Tr. 267.)

In 2003, Plaintiff was hospitalized after complaining of dizziness, arm weakness, numbness, and slurred speech attributable to a cerebrovascular accident (stroke). (Tr. 137, 260.) Plaintiff did not suffer any significant debilitating side effects or require rehabilitation as a result of this stroke. (Tr. 260.) In November 2003, Dr. Celia Roque performed a consultative medical examination of Plaintiff for the New Jersey Division of Disability Determination Services. (Tr. 173-78.) Dr. Roque diagnosed Plaintiff with "Status-Post Mitral and Aortic Valves Replacement Secondary to Mitral Valve Stenosis and Aortic Insufficiency Secondary to Rheumatic Heart Disease" and "Chest Pain and Dizziness most likely Secondary to Heart Valve Problems and or Stable Angina Secondary to Ischemic Heart Disease." (Tr. 175.) Dr. Roque noted that the results of an electrocardiogram showed "questionable anteroseptal wall myocardial infarction most likely ischemia [and] left ventricular hypertrophy," and also noted that Plaintiff "appears capable of performing activities of daily living and instrumental activities of daily living." *Id.*

A residual functional capacity report by a Dr. Jason was completed in May 2005 at the Raritan Bay Medical Center, wherein the doctor opined that Plaintiff would likely be absent from work about three times per month, that his symptoms would often interfere with attention and

2

concentration, that he could tolerate a low stress job, and that in a typical work day, Plaintiff could sit and stand/walk for about 4 hours respectively. (Tr. 223-27.)

Plaintiff sought treatment multiple times in 2005 and 2006 after complaining of chest pain, palpitations, and headaches. (Tr. 260.) In August 2005, Plaintiff was hospitalized for chest pain, dizziness, and numbness, but this was diagnosed as atypical and not attributed to any cardiac or neurological event. *Id.* In May 2006, Plaintiff was again admitted to the hospital with complaints of rectal bleeding and epistaxis, as well as a prolonged nosebleed, all attributable to his use of the blood thinner Coumadin. *Id.* Plaintiff presented again at the hospital in December 2006 after being accidently struck in the head with a baseball bat, but was discharged without being admitted after stabilizing. *Id.* Finally, in November 2007, Plaintiff presented to the emergency room with complaints of palpitations and dizziness, and although he was stabilized and not admitted, he was diagnosed with new onset rapid atrial fibrillation. *Id.*

**B.     Procedural History**

Plaintiff initially filed an application for Disability Insurance Benefits on September 5, 2003 alleging disability since January 15, 2002. Plaintiff's Brief ("Pl. Br.") at 1. After the application was denied by the Social Security Commission both initially and upon reconsideration, Plaintiff requested and had a hearing before an Administrative Law Judge ("ALJ") on June 23, 2005. *Id.* On August 12, 2005, ALJ Dennis O'Leary issued an unfavorable decision, and the Appeals Council concluded on July 13, 2006 that there were no grounds for review. *Id.*

Plaintiff then sought District Court review and on June 2, 2008, the Honorable Susan D. Wigenton issued an opinion remanding the case to the Commissioner. (Tr. 265.) Judge

Wigenton found that the ALJ's opinion did not fully discuss the evidence used to determine the credibility of Plaintiff's subjective complaints and that the ALJ needed to use a vocational expert to assess the impact of Plaintiff's non-exertional impairments on his ability to participate in an occupational base. (Tr. 272.) Judge Wigenton also found that the ALJ failed to establish whether or not Plaintiff could work for six out of eight hours in a day, and that the ALJ did not meet his burden of proof in determining that other work in the national economy exists that Plaintiff can perform. (Tr. 273.)

The Appeals Council subsequently ordered the matter remanded for further proceedings on October 15, 2008, and a second hearing was held in front of ALJ O'Leary on February 13, 2009. (Pl. Br. at 3.) The result of the second hearing was another unfavorable decision issued on April 7, 2009 and the subsequent refusal of the Appeals Council to assume jurisdiction on March 29, 2011. *Id.* As a result, Plaintiff once again brought this matter to the District Court by filing a complaint on May 26, 2011.

C.    **The Disability Standard And The Decision Of The ALJ**

    1.    The Statutory Standard For A Finding Of Disability

An individual is considered disabled under the Social Security Act if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). An individual will be

deemed disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant meets this definition of disability, the Commissioner applies the following sequential analysis prescribed by Social Security Regulations 20 C.F.R. § 416.920(a):

Step One: Substantial Gainful Activity. The Commissioner first considers whether the claimant is presently employed, and whether that employment is substantial gainful activity.[1] If the claimant is currently engaged in substantial gainful activity, the claimant will be found not disabled without consideration of his medical condition. 20 C.F.R. § 416.920(b).

Step Two: Severe Impairment. If the claimant is not engaged in substantial gainful activity, she must then demonstrate that she suffered from a severe impairment or combination of impairments considered severe. A "severe impairment" is one "which significantly limits [the claimant's] physical or mental capacity to perform basic work activities." If the claimant does not demonstrate a severe impairment, he will be found not disabled. 20 C.F.R. § 416.920(c).

Step Three: Listed Impairment. If claimant demonstrates a severe impairment, the Commissioner will then determine whether the impairment meets or equals an impairment listed on the Listing of Impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant has such an impairment, he is found disabled. If not, the Commissioner proceeds to the fourth step. 20 C.F.R. § 416.9209(d).

---

[1] "Substantial" work involves significant physical and mental activities. "Gainful" work is performed for pay or profit. 20 C.F.R. § 416.972.

Step Four: Residual Functional Capacity.  At step four, the Commissioner determines whether, despite his impairment, the claimant retains the residual functional capacity ("RFC")[2] to perform his past relevant work.  If so, the claimant is found not disabled and the inquiry proceeds no further.  If not, the Commissioner proceeds to the fifth step.  20 C.F.R. § 416.920(e)-(f).

Step Five: Other Work.  If the claimant is unable to perform past work, the Commissioner considers the individual's RFC, age, education, and past work experiences to determine if he is able to make an adjustment to other work.  If he cannot do so, the claimant is found disabled.  20 C.F.R § 416.920(g).

This five-step analysis involves shifting burdens of proof.  *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983).  The claimant bears the burden of persuasion during the first four steps.  *Bowen v. Yuvkert*, 482 U.S. 137, 146 n.5 (1987).  If the analysis reaches the fifth step, however, the Commissioner bears the burden of proving that the claimant is able to perform other work available within the national economy.  *Id.*

2. The ALJ's Determination At The First Hearing

Applying this five-step analysis, the ALJ during the first hearing before him found at step one that while Plaintiff had worked since his alleged disability onset date, that work qualified as an "unsuccessful work attempt," and therefore that Plaintiff had not been engaged in any substantial gainful activity.  (Tr. 16.)  At the second step, the ALJ determined that Plaintiff had severe cardiac and neurological impairments that impose more than minimal restrictions on his

---

[2] RFC designates the claimant's ability to work on a sustained basis despite his physical or mental limitations.  The RFC determination is not a decision as to whether a claimant is disabled, but is used as the basis for determining the particular types of work a claimant may be able to perform despite his impairment(s).  20 C.F.R. § 416.945.

ability to perform basic physical work-related activities. *Id.* At the third step, the ALJ found that Plaintiff did not meet or equal one of the required Listings. *Id.* Specifically, the ALJ found that Plaintiff's cardiac and neurological impairments were not accompanied by the abnormal clinical findings, diagnostic results, mental function limitations, or secondary complications required by the Listings. *Id.*

At the fourth step, the ALJ found that Plaintiff's subjective allegations of pain were incredible to the extent that they were not consistent with the medical evidence when considered in totality. (Tr. 16-18.) Thus, the ALJ found that the Plaintiff retained the capacity to perform a full range of light work, including lifting no more than 20 pounds at a time, sometimes lifting and carrying 10 pounds, and prolonged standing and walking. (Tr. 18.) Because Plaintiff's previous relevant work consisted of heavy exertional work, the ALJ found that Plaintiff did not have the RFC to return to his previous work. *Id.* Finally, at step five, the ALJ found that because of Plaintiff's RFC, age, education, and relevant prior work experience, a determination of not disabled was warranted via Table No. 2, Appendix 2, Subpart P, Regulations No. 4. (Tr. 18-19.)

    3.    <u>The ALJ's Determination At The Second Hearing</u>

Upon remand, the ALJ held a second hearing and issued a second ruling. At step one, the ALJ once again found that Plaintiff had not engaged in substantial gainful activity.[3] At step two, the ALJ found once again that Plaintiff had the severe impairments of cardiac and neurological disorders. (Tr. 258.) At step three, the ALJ again concluded that Plaintiff did not have an

---

[3] As the ALJ noted, plaintiff returned to work as a forklift operator beginning in January 2007, and earned $10,507.25 in 2007, roughly $300 less than the threshold at which point he would be deemed to have engaged in substantial gainful activity. Because plaintiff now seeks benefits only for the period from January 15, 2002 to January 2007, plaintiff's return to work in 2007 does not prevent him from pursuing this action. (Tr. 258.)

impairment or combination of impairments that meets or medically equals one of the Listings. *Id.* The ALJ found once again that no treating or examining physician had mentioned clinical findings suggesting that Plaintiff's impairments met or equaled one of the Listings. *Id.* The ALJ further found that Plaintiff's impairments were not accompanied by the clinical findings, diagnostic test results, and secondary complications required by the Listings. *Id.* Addressing Plaintiff's newly-diagnosed cardiac arrhythmia, the ALJ noted that it has not resulted in uncontrolled, recurrent episodes of cardiac syncope or near syncope as would be required to meet or equal a listed impairment. *Id.*

The ALJ at step four found that Plaintiff has the RFC to perform light work with specific limitations, including the inability to sit more than four hours, to stand more than four hours, and "the need to avoid undue concentrations of dust, smoke, fumes, or other pulmonary irritants." (Tr. 259.) The ALJ also determined that given his functional limits, Plaintiff had the ability to work as a forklift operator, which he had been doing for approximately two years at the time of the hearing. (Tr. 262.) Finally, although he was not required to do so, the ALJ proceeded to step five and utilized a vocational expert to confirm that, even if Plaintiff had not been able to return to his past work as a forklift operator, there were jobs available in the national economy that Plaintiff could perform with his limitations. (Tr. 263.) Accordingly, the ALJ concluded that Plaintiff was not disabled from January 15, 2002 until the date of the second decision. *Id.*

## II.  DISCUSSION

### A.  Standard Of Review

This Court reviews the decision of the Commissioner to determine whether there is substantial evidence in the administrative record supporting his decision. 42 U.S.C. § 405(g);

*Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422,427 (3d Cir. 1999) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If there is substantial evidence supporting the Commissioner's finding, this Court must uphold the decision even if it might have reasonably made a different finding based on the record. *Simmonds v. Hecker*, 807 F.2d 54, 58 (3d Cir. 1986).

**B.     Review Of The Commissioner's Decision**

Plaintiff challenges the decision of the Commissioner, contending that the ALJ's denial of benefits is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ erred by: (1) failing to compare Plaintiff's impairments, individually or in combination, to the relevant listed impairments at the third step in the sequential evaluation (Pl. Br. 11-15); (2) failing to provide adequate evidentiary support for his RFC assessment (Pl. Br. 15-20); (3) failing to properly evaluate Plaintiff's subjective complaints of pain (Pl. Br. 20-22); and (4) selectively and improperly relying on the testimony of the vocational expert in concluding that Plaintiff is not disabled. (Pl Br. 22-29). The Court will address each argument in turn.

    1.     <u>Comparing and Combining Impairments</u>

Under 20 C.F.R. § 416.920(d), if the claimant has an impairment found in the relevant Listings, the Commissioner will consider him disabled regardless of his age, education, and work experience. To be disabling, an impairment must meet all the criteria of a listed impairment. *Sullivan v. Zeblev*, 493 U.S. 521, 530 (1996). If a claimant has multiple impairments, but none alone meets or equals an impairment in the Listings, the Commissioner will consider whether findings related to a combination of the claimant's impairments are at least of equal medical

significance to those of a listed impairment. 20 C.F.R. § 416.926(b)(3). Plaintiff argues that the ALJ's severity finding in his second decision is repeated verbatim from his first decision, and ignores substantial evidence within the record showing that Plaintiff does indeed meet Listing 4.04. (Pl. Br. 13.) The ALJ's review of the record and explicit citations to specific Listings demonstrate that the ALJ conducted a proper evaluation and comparison of all relevant medical evidence in the record at step three.

The ALJ concluded in both his first and second opinions that Plaintiff did not meet the requirements of any of the Listings, and specifically focused on Listings 4.04 and 4.05. (Tr. 258.) As the ALJ noted, although Plaintiff did suffer from valvular heart disease and cardiomyopathy, the record does not contain clinical evidence or diagnostic tests sufficient to satisfy any of the Listings showing chronic heart failure, ischemic heart disease, recurrent arrhythmias, or evidence of a central nervous system vascular accident with significant and persistent disorganization of motor function in two extremities. (Tr. 258); 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 4.02, 4.04, 4.05, 4.05, 4.07, 4.08, 11.04. Additionally, Dr. Martin Fechner, who testified as a medical expert in the first hearing, determined that Plaintiff did not meet any of the Listings after reviewing Plaintiff's medical records. (Tr. 239.)

Plaintiff insists that "all he needed was ischemic heart disease" to meet 4.04 and 4.05 of the Listings and therefore be presumptively disabled at step three. (Pl. Br. 15.) This contention is an oversimplification of the Listings and lacks merit. Listing 4.04 sets forth specific medical requirements a claimant must meet in order to be found to have presumptively disabling ischemic heart disease. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.04 (setting forth three possible ways to meet the Listing, each of which requires specific medical evidence

demonstrating the nature and severity of the claimed impairment). As the ALJ noted, after evaluating Plaintiff, Dr. Roque concluded that Plaintiff suffered from "Chest Pain and Dizziness most likely Secondary to Heart Valve Problems and or Stable Angina Secondary to Ischemic Heart Disease" and "questionable anteroseptal wall myocardial infarction most likely ischemia, left ventricular hypertrophy." (Tr. 175).[4]

Dr. Roque's findings were cited in the step five portion of Judge Wigenton's opinion and are not disputed. However, Judge Wigenton found no problem with the ALJ's analysis of his findings for purposes of the step three analysis. Dr. Roque's findings did not cite the detailed medical evidence requirements of Listing 4.04, nor establish for purposes of the step three analysis that plaintiff had presumptively disabling ischemic heart disease as defined by that Listing. In addition, Dr. Martin Fechner, after evaluating Plaintiff's medical records, concluded that plaintiff's cardiac impairments did not meet or equal any of the listed impairments. (Tr. 239) The similar nature of the ALJ's pre and post remand step three analysis is not in tension with Judge Wigenton's opinion.

A claimant bears the burden of establishing that his impairment meets or equals a listed impairment. *Poulos v. Comm'r of Social Security*, 474 F.3d 88, 92 (3d Cir. 2007). By failing to identify any medical evidence in the record that would satisfy the requirements of Listing 4.04, plaintiff has failed to establish that his cardiac impairment meets or equals that Listing. Because substantial evidence supports the ALJ's conclusion that plaintiff's cardiac impairments do not meet or equal Listing 4.04, this Court must uphold the ALJ's determination on this issue. *See Simmonds v. Hecker*, 807 F.2d 54, 58 (3d Cir. 1986).

---

[4] Dr. Roque also found that Plaintiff's chest pains were "atypical for coronary heart disease (angina)," and that Plaintiff allegations of pain were credible but "not bad enough to warrant abstaining from work." (Tr. 184.)

Plaintiff also contends that he should have been found disabled pursuant to Listing 4.05, because he suffered cardiac arrhythmia after the first hearing. To meet the requirements of Listing 4.05, the claimant's arrythmia must resulting in uncontrolled, recurrent episodes of cardiac syncope or near syncope and be documented in accordance with the terms of the Listing. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.05. As the ALJ correctly noted, Plaintiff adduced no evidence within the record of recurrent episodes of syncope or near syncope, and thus, Plaintiff fails to meet or equal this Listing. (Tr. 258.) Accordingly, substantial evidence supports the ALJ's conclusion regarding Listing 4.05, and it must also be upheld by this Court. *Simmonds*, 807 F.2d at 58.

Plaintiff finally argues that the ALJ failed to compare the combined effects of his impairments with the relevant Listings. However, Plaintiff adduced no evidence into the record nor any medical theory in his briefs to this Court as to how his impairments considered together would meet or equal any of the Listings. Plaintiff's argument also fails because he has identified no "medical evidence ignored by the ALJ that would show that [his] impairments medically equaled one of the listings." *Cosby v. Comm'r of Social Security*, 231 Fed. Appx. 140, 146 (3d Cir. 2007).

When conducting a step three analysis, an ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Here, by analyzing Plaintiff's medical history and specifically considering each of Plaintiff's impairments, (Tr. 258-60), the ALJ provided a "sufficient development of the record and explanation of findings to permit meaningful review" of the step three determination. *Id.* (citing *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000)). For the

reasons discussed above, substantial evidence supports the ALJ's step three determination and it must therefore be upheld. *Simmonds*, 807 F.2d at 58.

      2.      <u>RFC Assessment</u>

At step four, the ALJ found that Plaintiff has the RFC to perform light work with additional limitations: the work could not require the ability to stand for more than four hours per day, and the work could not expose Plaintiff to undue concentrations of dust, smoke, fumes, or other pulmonary irritants. (Tr. 259.) Plaintiff claims that the ALJ failed to follow Judge Wigenton's order to reconsider certain evidence in determining whether Plaintiff had the RFC to perform light work. (Pl. Br. 20.) Judge Wigenton specifically asked the ALJ to address the credibility of that portion of Dr. Jason's report that evaluated the intensity, persistence and cause of Plaintiff's chest pain and dizziness, as well as to address Dr. Jason's determination about Plaintiff 's ability to perform light work, with limitations. (Tr. 273-78.)

The ALJ addressed Judge Wigenton's concerns in his second decision. The ALJ noted that Plaintiff had returned to work as a forklift operator in January 2007 and had been working as a forklift operator for approximately two years as of the time of the second hearing. (Tr. 262.) The ALJ concluded that based on the medical evidence, Plaintiff's testimony, and Plaintiff's recent work history, Plaintiff was capable of returning to his past work as a forklift operator, which a vocational expert classified as light work. (Tr. 262; Tr. 432-33.) In the alternative, the ALJ concluded that Plaintiff was capable of performing light work after posing to the vocational expert a series of hypothetical questions addressing Plaintiff's non-exertional limitations. (Tr. 263; 432-37.) The ALJ explained his use of portions of Dr. Jason's opinion and described in detail his evaluation of Plaintiff's subjective complaints regarding his symptoms. (Tr. 259-62.)

In assessing the limiting effects of Plaintiff's impairments, the ALJ considered the evidence according to 20 C.F.R. § 404.1529(c). Because the medical evidence showed that Plaintiff has an impairment that could reasonably be expected to produce his symptoms, the ALJ evaluated the intensity and persistence of the symptoms by considering Plaintiff's medical history, his statements, statements from his treating and examining physicians, and medical opinions. 20 C.F.R. § 404.1529(c). The ALJ concluded that Plaintiff's impairments could be expected to produce his symptoms. However, the ALJ also found that Plaintiff's allegations about the intensity, persistence, and limiting effects of the symptoms were not credible to the extent that Plaintiff claimed an inability to perform light work. (Tr. 262.) The ALJ's second decision is by no means a verbatim recitation of his first decision, and it respects and complies with Judge Wigenton's ruling by providing substantial explanations for its findings.

First, the ALJ noted that Plaintiff underwent successful cardiac surgery in 1999 and that his subsequent tests have shown adequate heart function; the Plaintiff's heart function, as evidenced by his significantly improving ejection fraction levels, is significantly better than the ejection fraction measurements that are listed in 4.02.[5] (Tr. 259-60.) Next, the ALJ took note of Plaintiff's 2003 stroke, from which he suffered no lasting neurological impairment.[6] (Tr. 260.) The ALJ acknowledged Plaintiff's episode of rectal and nose bleeding, but observed that it was a result of side effects from the blood thinner Coumadin. (Tr. 260.) Next, the ALJ specifically discussed Plaintiff's hospital records, noting that tests in 2005 showed him as asymptomatic with

---

[5] Plaintiff's left ventricular ejection fraction was measured as 38% in 2003, 39% in 2005, and 47% in 2006 (Tr. 259-60); to qualify as disabled under Listing 4.02, it must be less than 30%. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.02(A)(1).

[6] The record and the testimony of Dr. Fechner both support the conclusion that there were no focal defects following Plaintiff's stroke. Six months after the stroke, Dr. Roque reported that Plaintiff had no issues walking, talking, dressing or undressing, and that he displayed normal fine and gross manipulation. (Tr. 174-75.)

a borderline normal ejection fraction percentage and revealed no intracranial hemorrhage or infarct. *Id.* In addition, the ALJ noted that a brain CT scan in 2006 (following Plaintiff's accident with a baseball bat) was normal. In addition, the ALJ noted that Plaintiff's atrial fibrillation in 2007 stabilized without any need for inpatient hospital admission. *Id.*

After going through the medical evidence, the ALJ made an RFC assessment that is "accompanied by a clear and satisfactory explication of the basis on which it rests." *Fargnoli v. Massanari*, 247 F.3d 34, 43 n.7 (3d Cir. 2001). Plaintiff observes that an ALJ must support his findings with specific references to the facts in the record in order to allow a court to conduct a proper review. (Pl. Br. 19.) This is exactly what the ALJ did in this case. The ALJ explained that Dr. Jason did not conclude that Plaintiff could only work for four hours per day. (Tr. 261.) This is supported by the record, as indeed, the questionnaire notes that Plaintiff could sit for four hours and stand for four hours. (Tr. 225.) The ALJ's revised RFC includes in it the environmental limitations suggested by Dr. Jason. (Tr. 261.) Judge Wigenton also asked the ALJ to revisit the issue of what impact Plaintiff's concentration difficulties would have on his RFC, which the ALJ did by posing several hypothetical questions to the vocational expert. In response to those questions, the vocational expert testified than an individual with Plaintiff's RFC who was limited as a result of fatigue and pain to performing simple and repetitive tasks was capable of performing a significant number of jobs in the economy. (Tr. 435.)

The ALJ also clearly explained the basis for his partial, rather than complete, reliance on Dr. Jason's opinion, noting that some of Dr. Jason's conclusions were not consistent with the evidence in the record. (Tr. 262.) Notably, both Dr. Roque, Plaintiff's examining physician, and Dr. Fechner, determined that Plaintiff was capable of light work. Dr Jason further opined that

Plaintiff would likely miss work three days per month. *Id.* The ALJ concluded that this observation by Dr. Jason was inconsistent with both the testimony at the hearing and Plaintiff's own actions. (Tr. 262, 431). The ALJ specifically noted that at the time of the hearing, Plaintiff had been working for two consecutive years as a forklift operator, a light job, which Plaintiff did not have to miss due to illness. (Tr. 262, 431.) Finally, the ALJ noted that Plaintiff has relied only on non-prescription Tylenol for his aches and pains and that this would not affect his ability to do light work.[7] *Id.*

---

[7] The ALJ found that Plaintiff's subjective complaints of pain were not entirely credible (Tr. 262.) The ALJ found, in essence, that Plaintiff would have some pain associated with his impairments, but not such extreme pain as to render him unable to do light work, with restrictions. The ALJ gave Plaintiff's assertions of pain "serious consideration." *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981). However, such assertions alone will not establish that a claimant is disabled; rather, "there must be medical signs and laboratory findings which show . . . medical impairment(s) which could be reasonably expected to produce pain or other symptoms alleged." 20 C.F.R. § 404.1529(a). The claimant "bears the burden of demonstrating that [his] subjective complaints [are] substantiated by medical evidence." *Alexander v. Shalala*, 927 F. Supp. 785, 795 (D.N.J. 1995) (citing *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992). The ALJ has discretion to "evaluate the credibility of a claimant and to arrive at an independent judgment in light of the medical findings and other evidence regarding the true extent of the pain alleged by claimant." *Id.* In performing this evaluation, the ALJ must consider the claimant's daily activities; the location, duration, frequency, and intensity of the alleged pain or other symptoms; precipitating and aggravating factors; the claimant's medications; and treatment and any other measures used to relieve the claimant's pain or symptoms, which in this case were relieved with Tylenol. 20 C.F.R. § 404.1529(c)(3).

Plaintiff mocks the ALJ's findings and claims that he disregarded Judge Wigenton's opinion. (Pl. Br. 21-22.) To the contrary, it is clear that the ALJ specifically considered and analyzed whether Plaintiff's subjective complaints were credible. Indeed, in his second decision, the ALJ finds Plaintiff's complaints partially credible - but not to the extent that they are inconsistent with his RFC findings and analysis. (Tr. 262.) The ALJ properly took the evidence viewed as a whole into consideration when evaluating Plaintiff's complaints of pain and formed his opinion regarding Plaintiff's credibility after a thorough analysis of Plaintiff's medical history and symptoms and the extent to which Plaintiff's symptoms were consistent with the objective medical evidence and other evidence presented.

Specifically, the ALJ noted that Plaintiff's 1999 heart surgery, which took place roughly three years before Plaintiff's claimed onset of disability, was successful and has not required additional hospital stays. (Tr. 259-260) The ALJ further noted that the mild stroke Plaintiff suffered in 2003 did not result in any after-effects. (Tr. 260.) Additionally, Plaintiff's ejection fraction level was measured successively at 38%, 39%, and 47%, indicating that his exercise

The ALJ's findings and the record support the conclusion that Plaintiff was capable of light work. The ALJ followed the proper framework in evaluating Plaintiff's RFC, and he sufficiently considered the evidence before him and explained his findings. The ALJ further addressed in his second opinion each of the issues raised by Judge Wigenton and the ALJ's determination that Plaintiff is capable of light work with certain environmental limitations is supported by substantial evidence.

3.     Past Relevant Work And Testimony of Vocational Expert

Finally, Plaintiff takes issue with the ALJ's conclusion that Plaintiff was capable of performing his past relevant work as a forklift operator and with the ALJ's use in the alternative of a vocational expert.  In his first decision, the ALJ found that Plaintiff was not capable of performing his past relevant work, but retained the capacity to perform light work.  In the second decision, the ALJ considered Plaintiff's past relevant work to include working as a forklift operator, a job which he got after the first decision and had held since January 2007.  That job is classified by the vocational expert as light work.  (Tr. 262, 232).  The ALJ therefore concluded that Plaintiff was capable of performing his past work as a forklift operator.  (Tr. 262).

---

capacity has improved.  (Tr. 259-60.)  The ALJ noted that when Plaintiff presented to the hospital for chest pain in 2004, his pain was quickly alleviated by medication and a "clinical workup did not attribute his chest pain to heart disease related origins."  (Tr. 259.)  Next, the ALJ noted that Plaintiff denied episodes of dizziness after suffering a stroke, walked with a normal gait and without assistance, and had good overall mobility.  (Tr. 261.)

A heart exam of Plaintiff in 2003 showed a regular rhythm and no focal deficits, intact sensation to pinprick, a range of motion within normal limits, and normal muscle strength. *Id.* Finally, the ALJ noted that Plaintiff's complaints of chest pain in 2005 and 2006 were evaluated as atypical and unrelated to cardiac, cardiovascular, traumatic, neurological, or cerebrovascular causes. *Id.*  The ALJ's analysis properly considered Plaintiff's conditions and medical history and found Plaintiff's symptoms incredible only to the extent that they are inconsistent with plaintiff's capacity to perform light work of the type he had been performing for approximately two years at the time of the second hearing.  Thus, the ALJ properly exercised his discretion to evaluate the credibility of Plaintiff's subjective complaints and "to arrive at an independent judgment in light of the medical findings and other evidence." *Alexander v. Shalala*, 927 F. Supp. 785, 795 (D.N.J. 1995) (citing *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992)).

17

In the alternative, the ALJ took the testimony of a vocational expert. An ALJ may rely on vocational expert testimony where the vocational expert accounts for the claimant's functional limitations, age, education, and work experience. *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984); *see also Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (noting that an ALJ may rely on a vocational expert's answers to hypothetical questions that accurately convey the claimant's credibly established limitations).

Plaintiff contends that the ALJ disregarded Judge Wigenton's order to consider Plaintiff's non-exertional limitations. (Pl. Br. 23.) However, the ALJ did so by asking the vocational expert to assume that Plaintiff had a limited ability to concentrate as a result of the effects of his pain. (Tr. 434; Tr. 261.) The vocational expert opined that if Plaintiff frequently experienced difficulty in concentrating, Plaintiff would not be able to work. (Tr. 438.) However, the ALJ correctly noted that there is no medical indication in the record by any of plaintiff's doctors that Plaintiff frequently has difficulty concentrating. (Tr. 224.)

Finally, Plaintiff contends that when he asked the vocational expert if Plaintiff could work if he needed to be absent more than three times per month, as Dr. Jason suggested, the expert opined that Plaintiff could not work. (Pl. Br. 26; Tr. 227) However, the ALJ specifically considered and rejected this aspect of Dr. Jason's report as unsupported by the record because it conflicted with the opinions of Dr. Roque and Dr. Fechner and with the most recent two years of Plaintiff's employment history. (Tr. 262.) Therefore, the ALJ was not required to accept that portion of the vocational expert's opinion. *See Jones*, 364 F.3d 501, 506 (3d Cir. 2004) (noting that an ALJ has the authority to disregard responses to hypothetical questions that are inconsistent with the medical record).

### III.  CONCLUSION AND ORDER

For the reasons set forth above, and after careful review of the record in its entirety, the Court finds that the ALJ's conclusion is based on substantial evidence in the record. Accordingly, this Court will **AFFIRM** the Commissioner's decision to deny Plaintiff Social Security benefits.

Therefore, **IT IS** on this 12th day of January, 2012, hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED**; and it is further

**ORDERED** that this case is **CLOSED**.

**/s/ Faith S. Hochberg**
Hon. Faith S. Hochberg, U.S.D.J.